UNITED STATES v. MAHAFFEY (COOPER, Intervener).

(Circuit Court of Appeals, Ninth Circuit. October 2, 1916.)

No. 2738.

1. PUBLIC LANDS ⨀120—PATENTS—HOMESTEAD ENTRIES—VACATION.

In a suit to cancel a patent to land issued under the Homestead Law (Act May 20, 1862, c. 75, 12 Stat. 392), on the ground of fraud in the final proofs as to the entryman's residence, evidence *held* to warrant a decree dismissing the bill.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⨀120.]

2. PUBLIC LANDS ⨀120—PATENTS—PRESUMPTIONS.

It is presumed that all preceding steps required to obtain a patent to public lands have been observed; and, in view of the importance and necessity of the stability of titles, a patent should be set aside for fraud in proofs only where the fraud is clearly established.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⨀120.]

Appeal from the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

Suit by the United States against William A. Mahaffey, in which Nelson Cooper intervened. From a decree dismissing the bill, complainant appeals. Affirmed.

The United States brought this suit in December, 1909, against Mahaffey to cancel a patent for land in Montana issued to Mahaffey under the Homestead Law. The complaint alleged fraud in final proofs, in that the depositions of Mahaffey and of his witnesses were false as to the residence of Mahaffey and cultivation and improvements made by him upon the land. As Mahaffey could not be found in the jurisdiction of Montana, order pro confesso was entered against him. Nelson Cooper intervened with an answer, and denied that Mahaffey's proofs, relating to his residence and improvements, were false. Cooper also pleaded that he was an innocent purchaser from Mahaffey in good faith and for full consideration, and that after purchase he had sold to one Heaton. After trial to the court, decree dismissing the bill was entered. The United States appeals, and assigns that the court erred in finding the evidence insufficient to sustain the allegations of the complaint.

T. W. Gregory, U. S. Atty. Gen., Burton K. Wheeler, U. S. Atty., of Butte, Mont., Homer G. Murphy, Asst. U. S. Atty., of Helena, Mont., and Frank Woody, Asst. U. S. Atty., of Butte, Mont.

James A. Walsh, of Helena, Mont., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] A brief summary of the testimony will suffice. Mahaffey made his homestead entry in April, 1899, and made final proof in June, 1904. These proofs, which were taken before the land officials at Great Falls,

Mont., were that Mahaffey built a cabin and established his residence on the land in June, 1899; that his cabin was 16x18 feet; that the land was fenced; had a corral upon it; that the value of the improvement was $300; and that Mahaffey had resided continuously upon the land since he established his residence thereon in June, 1899. To sustain the averments of the present complaint that the original proofs in respect to these matters were false, the government introduced the testimony of five witnesses. One testified, in substance, that he lived within a mile or two of the land; that he first saw the land in March or April, 1904, and that there was then an old log cabin on it, with big cracks between the logs, no window, door, or floor, no stove pipe in the roof; that there was no fencing on the land except on the east end, and no corral except some lambing pens belonging to Cooper, father of intervener; and that he never saw Mahaffey on the place. Two other witnesses said, in substance, that they knew the land in 1902, 1903, and 1904; that they had seen the cabin on the land; that it had a dirt floor, was about 10x12 feet; that they had never seen Mahaffey or any one else living on the land, and saw no fence except on the east side; that there was a reservoir upon the place, the reservoir having been built after 1904. Another witness said that he knew the land in 1904; that the cabin then had no roof or floor or door or window, and that there were no other improvements, buildings, or fences of any kind, except a fence east of the land; that he never saw Mahaffey on the land. A special agent of the General Land Office testified that he first saw the place in 1909, and then found a 10x12 log cabin on the land; that at that time there was no floor, window, or door in the cabin; that the land was then inclosed in the fields of Cooper, the intervener's father.

To meet this evidence the intervener introduced four witnesses. The intervener's father said that he purchased the land from Mahaffey for the intervener; that he saw Mahaffey on the land in 1900, and saw furniture in the cabin at that time; that the cabin had a board roof and floor, and that he (witness) had sold wire fence to Mahaffey to use upon the land; and that he saw a reservoir and ditch on the place. Another witness testified that he knew Mahaffey between 1900 and 1904; that the cabin, about 14x16 feet, was plastered, had a stove pipe in the roof, had a door and window, and that there was a reservoir and ditch and some fence on the land; that he had often seen Mahaffey, who had worked for Cooper under witness in 1904, and observed Mahaffey "traveling to and from the direction of his ranch." Another witness, who had lived near the land for 25 years, described the Mahaffey place as rough land only fit for grazing, and said that the Mahaffey cabin had a stove pipe through a board roof; that there was a floor, window, and door in the cabin in 1905; that there was a reservoir, ditch, and some fences on the east side; that Mahaffey was there, and "was considered a pretty good man in that community." Another witness for the intervener said that he knew Mahaffey; that he had been upon the land several times when Mahaffey lived there; that he had been in the cabin (about 1905), and had stayed there several days; that it was plastered between the logs and was furnished; that there was a little corral and

a ditch there; that Mahaffey kept some saddle horses, and was at the place whenever he was there.

. From this résumé of the testimony it will be noticed that there was a serious conflict in the evidence of the respective parties. Witnesses disagreed in respect to the actual inhabitancy of the land by Mahaffey, as to the nature and extent of the improvements, and particularly as to detailed facts which were important to enable the court to reach satisfactory conclusions. The case largely turned upon the credibility of the witnesses. The District Judge, in his opinion, commenting upon the testimony of the witnesses for the government, said that it was negative, that the opportunities of the witnesses for observation were few, and that their testimony was "hesitant and drawn out, modified, strengthened, and shaped by leading questions," and that little credibility and weight could be given it in the main. We cannot say that this judgment of the evidence of the government was inaccurate and ought to be overturned. The judge saw and heard the witnesses, and was in far better position than is this court to judge of the value of their statements, and we cannot say that the finding made is plainly against the evidence.

[2] We must therefore affirm, under the rule that the case belongs to that class where, as laid down in United States v. Stinson, 197 U. S. 200, 25 Sup. Ct. 426, 49 L. Ed. 724, the respect due to the patent, the presumptions that all the preceding steps required by law have been observed before its issue, the importance and necessity of the stability of titles dependent upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them should only be successful when the allegations on which this is attempted are fully sustained. Diamond Coal Company v. United States, 233 U. S. 236, 239, 34 Sup. Ct. 507, 58 L. Ed. 936; Connor v. United States, 214 Fed. 522, 131 C. C. A. 68.

Affirmed.